

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ANTONIO MINOR,                    )
                  Petitioner,     )
V.                                )        Criminal No. 1:09CR210
                                  )        Civil Action No. 1:11CV1122
UNITED STATES OF AMERICA,         )
                                  )
                  Respondent.     )
_____)

## MEMORANDUM OPINION

This case is before the Court on Antonio Minor's ("Defendant")
Motion To Vacate, Set Aside Or Correct His Sentence pursuant to 28
U.S.C. § 2255. Defendant alleges seventeen grounds to support his
motion, primarily alleging that his pre-trial, sentencing, and
appellate counsel were ineffective for:  (1) failing to object to
the Pre-Sentence Report's various sentence calculations (Grounds
One, Two Three, Four, Five, Seven, Eight, Seventeen); (2) failing
to move for dismissal of a count and the Indictment for an alleged
Speedy Trial Act violation and pre-indictment delay, respectively
(Grounds Six and Nine); (3) providing poor advice as to whether to
enter a guilty plea (Grounds Ten, Eleven and Fifteen); and (4) failing
to raise certain arguments on appeal and for allegedly abandoning
Defendant's appeal. (Grounds Twelve and Sixteen).  Defendant also
claims that his plea was not knowing and voluntary and that there
was prosecutorial misconduct.  (Grounds Thirteen and Fourteen).

Between January and May 2006, Defendant was part of a car theft ring operating in the Washington D.C. metropolitan area.   Defendant stole and possessed multiple cars involved in the conspiracy, while other participants provided counterfeit documents to conceal the fact that the vehicles were stolen. Some of the cars Defendant was involved with were stolen from car dealerships while others were taken from private citizens; some of the stolen cars included luxury cars made by Mercedes, BMW, and other high end brands.   The United States' investigation began shortly after the end of the conspiracy. Other co-conspirators were convicted and sentenced in 2007, 2008, and 2009.

In early April 2009, Defendant was arrested on a Criminal Complaint charging him with conspiracy to engage in the receipt, possession, and sale of stolen motor vehicles in violation of 18 U.S.C. § 371.   On May 5, 2009, a grand jury returned an Indictment against Defendant, charging him with Conspiracy, in violation of 18 U.S.C. § 371 (Count I) and with Interstate Receipt, Possession and Sale of Stolen Motor Vehicles, in violation  of 18 U.S.C. §§ 2313 and 2 (Count II).   On May 15, 2009, Defendant was arraigned and a jury trial was set for July 7, 2009.   Shannon Quill and Todd Richman represented Defendant.

On July 7, 2009, the day of trial, without entering into a plea agreement, Defendant pled guilty to conspiracy, in violation of 18 U.S.C. § 371, and the interstate receipt, possession, and sale

2

of stolen motor vehicles, in violation of 18 U.S.C. § 2313.   On
September 15, 2009, the Court granted Defendant's Motion To
Substitute Attorney Robert Jenkins, Jr., to replace Ms. Quill and
Mr. Richman.   A Pre-Sentence Report ("PSR") was prepared by the
probation office on or about September 3, 2009.   After considering
defense objections of September 24, 2009 to the PSR's sentence
calculations, including objections to the application of a two-level
enhancement for an organized scheme to steal motor vehicles under
U.S.S.G.   § 2B1.1(b)(12), the probation office prepared an Addendum
to the PSR on September 30, 2009.

    The sentencing hearing was held on October 9, 2009.   The Court
adopted the factual findings and guideline applications in the PSR,
which had found an offense level of 22 and criminal history category
of VI; the Court found that the assessments made were correct in
dealing with the facts of this case.   The Court further found the
Guideline factors to be properly assessed at a range of 84 to 105
months imprisonment.   Defense sentencing counsel argued the
appropriate Guidelines range was 70 to 87 months and requested a
sentence of 63 months or, alternatively, a sentence at the low end
of the Guidelines range.   The Government argued the Guidelines range
should be 100 to 125 months, based on an offense level 24 and a
criminal history category VI and asked for a "severe sentence" within
that range.   Considering the relevant 18 U.S.C. § 3553 factors, the
Court found that punishment at the low range of the Guidelines would

3

meet the needs of the factors, and sentenced Defendant to 60 months incarceration on Count 1, 84 months on Count II, three years of supervised release and a special assessment of $100 as to both counts. The sentences in Counts I and II were to run concurrently with one another.

On appeal, Mr. Jenkins continued to represent Defendant. On October 12, 2010, the Fourth Circuit affirmed Defendant's conviction and sentence, rejecting his argument that his sentence was substantively unreasonable because it was greater than those of his co-conspirators and reflected an unwarranted sentence disparity among defendants. The Fourth Circuit pointed out that Defendant's sentence differed from those of his co-conspirators because his more extensive criminal history yielded a higher Guidelines range, and held that Defendant had not rebutted the presumption of reasonableness that applies to a sentence within the properly calculated Guidelines range. Judgment was entered on October 12, 2010.

A prisoner in federal custody collaterally attacking his sentence or conviction pursuant to 28 U.S.C. § 2255 bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or the laws of the United States, that the court was without jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255 (2011).

The petitioner-defendant bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Supreme Court has noted that collateral review, such as habeas review, "is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Bousley v. United States, 523 U.S. 614, 621 (1998) (citations omitted). Therefore, "the doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal." United States v. Hurdle, 2007 WL 1555779 at *2 - *3 (E.D. Va. May 22, 2007) (applying doctrine of procedural default to § 2255 motion filed by a defendant who pled guilty and waived his right to appeal); see also Matthews v. United States, 514 F. Supp. 2d 827, 832-33 (E.D. Va. 2007)(same; § 2255 motion "may not do service for an appeal"); United States v. Frady, 456 U.S. 152, 167-68 (1982) (involving a § 2255 motion). Defendant's direct appeal only raised the claim that the Court abused its discretion in refusing to deviate from the Guidelines range of 84 to 105 months incarceration, in contravention of 18 U.S.C. § 3553(a), because Defendant's sentence was unreasonable compared to the sentences received by five other conspirators. See generally United States v. Minor, No. 09-4960 (4th Cir.). Therefore, other than this one claim, Defendant procedurally defaulted on all claims that he was required to appeal prior to seeking alternate relief. See Frady, 456 U.S. at 165; Matthews, 514

F. Supp. 2d at 832-33; Hurdle, 2007 WL 1555779 at *2.

A procedurally defaulted claim, however, may be considered on collateral review in limited circumstances. First, procedural default will not act as a bar to collateral relief where a defendant shows both cause and actual prejudice resulting from the alleged error underlying his Section 2255 motion. See Bousley, 523 U.S. at 622; Frady, 456 U.S. at 167; United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999). In demonstrating such error, the petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)); see also Hurdle, 2007 WL 1555779 at *2. Second, where a petitioner can demonstrate actual innocence, collateral relief should be granted to avoid a miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 321(1995). Third, ineffective-assistance-of-counsel claims may be the subject of a proper § 2255 motion despite a failure on the petitioner's part to seek direct review. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Claims of ineffective assistance of counsel are evaluated by the rigorous two-pronged test established in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The first prong addresses a counsel's professional competence. To meet this standard, a defendant must demonstrate that, in light of all the circumstances

as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," i.e., "prevailing professional norms." Strickland, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689-90; United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004). The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. The reasonableness of a counsel's actions often depend on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691.

To satisfy the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694. In other words, a defendant must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, a trial whose result is unreliable. See id., 466 U.S. at 687, 693. For example, errors in a Sentencing Guidelines determination, resulting in an increased prison term, have been found to establish Strickland prejudice. Glover v. United States, 531 U.S. 198, 200 (2001).

"Failure to make the required showing of either deficient

performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700. Because "[t]he defendant bears the burden of proving Strickland prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." See Fields v. Attorney General of the State of Maryland, 956 F.2d 1290, 1297 (4 th. Cir. 1992); accord Strickland, 466 U.S. at 697; Terry, 366 F.3d at 315.

Defendant argues that his counsel rendered ineffective assistance by not objecting to numerous aspects of the Pre-Sentence Report's (PSR) calculation of his sentence.  Section 2255 relief is usually not available for errors in application of the Sentencing Guidelines unless such errors constitute a miscarriage of justice. See, e.g., United States v. Pregent, 190 F.3d 279, 28384 (4th Cir. 1999) (error in calculation of Sentencing Guidelines range generally not reviewable under § 2255; relief only available if sentence exceeds statutory maximum).  Here, Defendant's arguments are largely premised on an incorrect understanding of how the Guidelines work: at sentencing, both after a guilty plea or after trial, the Court can consider proper factors beyond the crime of conviction or the information in an indictment – such as, for example, the loss amount attributed to a conspiracy or a defendant's criminal history. These arguments do not provide a basis to vacate, set aside or correct Defendant's sentence.

Defendant alleges that sentencing counsel failed to object to

8

the PSR's allegedly incorrect calculation of loss amount in determining the offense level and sentencing range for Counts I and II. As to Count I, Defendant argues that his counsel should have objected to the probation officer's increase of 14 levels under § 2B1.1(b)(1)(H) for a loss of more than $400,000, because Count II alleged that Defendant had received, possessed, and sold a stolen 2004 Range Rover that had crossed state lines and that the value of the car was $55,150. Similarly, as to Count I, because the Indictment only identified three stolen vehicles, with a total combined value of $171,481, Defendant argues that the probation officer should have used § 2B1.1(b)(1)(F) (loss more than $120,000), not § 2B1.1(b)(1)(H) (loss more than $ 400,000), to determine the adjusted offense level and sentencing range. Defendant speculates that, but for the errors, the Court "*could* have imposed a sentence 50 months shorter" than the one received for Count II and 15 to 25 months shorter than the one received for Count I.

Defendant is incorrect. For *sentencing* purposes, the specific offense characteristics "shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled . . . or willfully caused by the defendant" and in the case of a jointly undertaken criminal activity, such as a conspiracy, "specific offense characteristics are also determined based upon "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during

the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ." U.S.S.G. § 1B1.3(a)(1) (Nov. 2008 ed.).  The Guidelines explain that the principles and limits of *sentencing accountability* under this guideline are not always the same as the principles and limits of *criminal liability*. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense. U.S.S.G. § 1B1.3, comment (n.1). In other words, with respect to sentencing, the Court and probation officer were required to consider all reasonably foreseeable acts and omissions committed, aided, abetted, or willfully caused by Defendant, as well as all reasonably foreseeable acts and omissions of others in furtherance of the conspiracy. Thus, any objections by counsel to the probation office's correctly-calculated loss calculations underlying the offense levels and sentencing ranges for Counts I and II would have been unfounded and, thus, denied.

In any event, sentencing counsel *did* effectively advocate on his client's behalf and made timely, reasonable objections.  Prior to sentencing, Mr. Jenkins objected to several aspects of the PSR, including the value attached to the vehicles which Defendant stole or attempted to steal.  The probation officer considered the

objections, but disagreed, noting that she had used the values of the thirteen vehicles associated with Defendant's acts from the Declaration of U.S. Secret Service Special Agent Stahl. She also noted that, even though the total loss Defendant was being held accountable for was $602,201, she was applying an increase for a loss of more than $400,000, i.e., more than $200,000 *less* in loss value than the total loss for which Defendant was being held accountable. Because counsel effectively advocated on his client's behalf and made timely, reasonable objections to challenge the PSR offense level and sentencing ranges for Counts I and II, counsel's actions fell within the range of reasonably effective assistance. See Strickland, 466 U.S. at 689-90.

Defendant also cannot prove resulting prejudice. There is no reasonable probability that he would have been sentenced to less time based on a lesser offense and sentencing range calculated by using the erroneous loss values proposed by Defendant, because the Guidelines advise that one must look at the loss value of all vehicles associated with Defendant's acts given his conviction of conspiracy.

Defendant argues that sentencing counsel was ineffective for failing to object to a two-level increase in offense level pursuant to § 2B1.1(b)(12) as a violation of the Ex Post Facto Clause. Defendant committed his offenses in 2006 when the 2005 Guidelines were in effect. The 2008 Guidelines, in effect at the time of sentencing in 2009, included § 2B1.1(b)(12) (Organized Scheme to

Steal Motor Vehicles), which was added to the Guidelines to address
offenses involving an organized scheme to steal or to receive stolen
vehicles by increasing the offense level by 2 levels.

    As an initial matter, Defendant has procedurally defaulted on
this claim because he did not raise it on direct appeal to the Fourth
Circuit.  See Bousley v. United States, 523 U.S. 614, 622 (1998).

    Defense counsel's conduct fell well within the range of
reasonably effective assistance.   Under Guidelines § 1B1.11(a),
"[t]he court shall use the Guidelines Manual in effect on the date
that the defendant is sentenced," unless it determines that such use
would violate the Ex Post Facto Clause. U.S. Const., art. I, § 9,
cl. 3.  In such cases, the Guidelines direct courts to apply the
manual in effect at the time the offense was committed.  U.S.S.G.
§ 1B1.11(b)(1); United States v. Knight, 606 F.3d 171, 177-80 (4th
Cir. 2010) (application of later sentencing guidelines version was
not plain error affecting defendant's substantial rights).  In light
of United States v. Booker, 543 U.S. 220, 245 (2005), in which the
Supreme Court rendered the Guidelines advisory, the courts of appeals
have disagreed on whether the Ex Post Facto Clause prohibits a court
from retroactively applying amendments that have the effect of
increasing a defendant's sentence. See United States v. Lewis, 606
F.3d 193, 203 (4th Cir. 2010) (application of an upwardly amended
advisory sentencing range poses a significant risk of an increased
sentence); but see United States v. Demaree, 459 F.3d 791, 795 (7th

12

Cir. 2006) (Ex Post Facto Clause does not bar retroactive application of severity-increasing Guidelines amendments).  Against this backdrop, Defendant's counsel was not ineffective.

First, counsel did object to the probation officer and to the Court, in writing and orally, regarding the increase under § 2B1.1(b)(12), because some of Defendant's previously-sentenced conspirators did not receive the increase.  Given that the PSR raised the Ex Post Facto Clause issue, as discussed further below, and pre-emptively explained that the probation office's policy is to apply the Guidelines in effect on the date of sentencing, it is not surprising that sentencing counsel objected to the increase in a manner to get at the same result of avoiding the  § 2B1.1(b)(12) increase, without directly citing the Ex Post Facto Clause.  Indeed, the probation office's responses to defense objections reflect that the Ex Post Facto Clause was an issue that the probation office was well aware of and that it believed that such objections were unfounded.

Second, even assuming, *arguendo*, that defense counsel did not specifically object to the enhancement on Ex Post Facto grounds, he was not ineffective, because it was unnecessary for him to object on this specific basis. The PSR had already advised the Court and all counsel, in capital and bold letters, that "**EX POST FACTO CONSIDERATION**" was an issue:  the sentencing range under the Guidelines in effect at the time of the offense would have been 70

13

to 87 months (offense level 20, criminal history category VI), while under the amended Guidelines it would have been 84 to 105 months (offense level 22, criminal history category VI). Defense counsel's objections thereafter to the application of § 2B1.1(b)(12) had served the purpose of requiring the probation officer to issue a PSR Addendum and to address the Ex Post Facto Clause issue again by explaining that the probation office's policy is to calculate the Guidelines in effect at the time of sentencing, because they are advisory. The probation officer then requested that the Court resolve this issue at sentencing.

Third, Defendant cannot demonstrate that, "in light of all the circumstances as they appeared at the time of the conduct, counsel's representations fell below an objective standard of reasonableness" or the "prevailing professional norms." Strickland v. Washington, 466 U.S. at 687-88. At the time of sentencing counsel's conduct in 2009, the Fourth Circuit had not addressed the issue; thus, the application of upwardly amended advisory sentencing ranges was not regarded as implicating the Ex Post Facto Clause, in light of the advisory nature of the Guidelines. Indeed, the probation office's policy was to apply the general Guidelines directive, i.e., to apply the Guidelines applicable at the time of sentencing. United States v. Lewis, supra, and United States v. Knight, 606 F.3d 171, 177-80 (4th Cir. 2010), which ultimately did provide guidance as to what circumstances involving application of an upwardly amended advisory

sentencing range poses a significant risk of an increased sentence and, thus, constitutes an Ex Post Facto Clause violation, were decided the following year, in 2010, after Defendant had been sentenced. Therefore, Defendant cannot prove that counsel's performance in light of all the circumstances as they appeared at the time of the relevant period, was objectively deficient.

Even assuming, *arguendo,* that Defendant could prove that counsel's performance, in light of all the circumstances as they appeared at the time of the conduct, fell below an objective standard of reasonableness, which he has not, Defendant cannot prove prejudice as a result. His claim of prejudice because "the District Court *could* have imposed a sentence in both counts shorter than the one . . . received," had counsel objected to the enhancement, is speculative and belied by the record. As a preliminary matter, even had counsel objected to the enhancement on Ex Post Facto Clause grounds as opposed to on the grounds that it had not been applied to previously-sentenced co-conspirators, the result would have been the same: the probation officer's response to the objections to § 2B1.1(b)(12) specifically explained that (1) the probation office calculates the Guidelines in effect at the time of sentencing, since the Guidelines are advisory only, (2) the probation office had applied the increase to two other related cases, and (3) it was one of several issues that the Court must resolve at the time of sentencing.

More significantly, Defendant cannot show prejudice. The Court sentenced Defendant to 84 months, a sentence which fell within *both* the 2005 Guidelines range of 70 to 87 months (offense level 20) and the 2008 Guidelines range of 84 to 105 months (offense level 22). Having been advised by the probation officer of the Ex Post Facto Clause issue in the PSR and having heard defense counsel's objections to the 2-level enhancement via the PSR Addendum, Defendant's sentencing paper, and oral argument, the Court imposed a sentence of 84 months, within the 70 to 87 month range advocated by Defendant's own counsel. As such, the 84-month sentence imposed by the Court was appropriate under *either* Guidelines range, the 2005 Guidelines without the enhancement or the 2008 Guidelines with the 2-level enhancement. United States v. Green, 436 F.3d 449, 457 (4th Cir. 2006); see also United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005). Therefore, Defendant cannot prove by a preponderance of the evidence that there is a reasonable probability that the result of the proceeding would have been any different, i.e., that he *would* have received a sentence lower than 84 months, but for counsel's failure to argue that § 2B1.1(b)(12)'s application violated the Ex Post Facto Clause. See, e.g., United States v. Knight, 606 F.3d 171, 180 (4th Cir. 2010) (distinguishing Lewis and holding that application of upwardly amended advisory Guidelines version was not plain error affecting the defendant's substantial rights, because "there must be a non-speculative basis in the record to conclude that

16

the district court would have imposed a lower sentence but for the error in calculating [defendant's] offense level."). The sentence would have been no different, even if counsel had specifically objected to § 2B1.1(b)(12) on Ex Post Facto Clause grounds, rather than on the grounds he advanced. Based on the record, Defendant cannot prove by a preponderance of the evidence that his counsel's performance was objectively deficient and that it prejudiced him.

Defendant's claim of ineffective assistance based on counsel's failure to object to the PSR allegedly combining the actual loss of the offense with the intended loss of uncharged offense also lacks merit.  The record reflects that Defendant's counsel objected to the value associated with the vehicles Defendant stole or attempted to steal. Moreover, nothing about Defendant's claim would excuse his procedural default for failing to raise earlier these sentencing challenges.

The Court need only make a reasonable estimate of the loss. U.S.S.G. § 2B1.1, comment. (n.3(C)). Contrary to Defendant's belief, the probation officer correctly applied the Guidelines loss provisions. For stolen vehicles, the intended loss is equal to the actual loss and, therefore, the probation officer used actual loss, which was $447,426.  For those vehicles Defendant intended to steal, but was unsuccessful, the probation officer used the intended loss of $154,775.  See, e.g., United States v. Goodson, 64 Fed. Appx. 889, 890-891, 2003 WL 21205884 *1 to *2 (4th Cir. 2003) (per curiam)

17

(affirming court's inclusion of estimated value for blank checks in determining amount of loss caused by defendant by calculating the sum of: 1) the actual loss caused by defendant's negotiation of 21 counterfeit checks, 2) the intended loss caused by 53 non-negotiated checks which defendant intended to negotiate, and 3) the loss associated with blank counterfeit checks).

Defendant also complains that sentencing counsel failed to object to the PSR's use of  § 2B1.1(b)(1)(H) to reflect the same amount of loss ($602,201) for both counts.  However, the Guidelines call for a single amount of loss to be applied to closely related counts in cases "where the offense level for a group of closely related counts is based primarily on aggregate value . . . or where a count of conspiracy . . . is grouped with a substantive count that was the sole object of the conspiracy."  (See U.S.S.G., Ch. 3 Pt. D, Intro. Comment. (Part D provides rules for determining a single offense level that encompasses all the counts of conviction, including for Chapter Two (theft, fraud, etc.) offense guidelines wherein the offense level is primarily based on the amount of money involved); § 3D1.2(d) (offenses covered by § 2B1.1 are to be grouped together into a single group).)  Here, Defendant was convicted of conspiracy and interstate auto theft.  Thus, there was no reason for counsel to object to the PSR's correct application of the same amount of loss for the two related counts.

Defendant's argument that counsel was ineffective in failing

to object to the amount of loss the PSR attributed to him in determining the offense level and sentencing range that was based on uncharged conduct "not relevant" to the offense of conviction is also flawed. For sentencing, the amount of loss for theft and fraud type of offenses, such as Defendant's crimes, is based upon "relevant conduct" and *not* limited to the count of conviction. See U.S.S.G. § 1B1.3(a) ("Relevant Conduct") (the specific offense characteristics and cross references in Chapter Two [larceny, fraud, or theft] shall be determined based on: (A) *all* acts and omissions committed, aided, abetted, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (such as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity). Counsel did not object, because the PSR was properly calculated. Thus, the Court need not reach the issue of prejudice, as none exists.

Defendant contends that defense counsel was also ineffective for failing to object to the restitution order, because it requires Defendant to pay restitution in excess of what is charged in the Indictment. Defendant has procedurally defaulted, for not raising this underlying issue with the District Court or on direct appeal. Bousley, 523 U.S. at 621.

Even assuming Defendant has not defaulted, counsel did not render constitutionally ineffective assistance, because Defendant's arguments do not provide a proper basis for objection. The Court

was *required* to impose full restitution, without consideration of
Defendant's ability to pay, because he was guilty of a mandatory
restitution crime, namely, interstate receipt, possession and sale
of stolen motor vehicles under 18 U.S.C. § 2313. <u>See</u> 18 U.S.C. S
3663A(a)(1) and (c) (listing all property offenses under Title 18
as offenses for which the court "shall" order that the defendant make
restitution to the victim, notwithstanding any other provision of
law). The record also shows that, on October 9, 2009, defense
counsel did request additional time from the Court in order to review
the restitution order with Defendant. The Court did not enter the
restitution order until nearly two weeks later, on October 21, 2009.
Defendant's complaints about defense counsel's ineffective
assistance or the Court's entry of an order without making a finding
of facts as to Defendant's ability to pay or available resources is
without merit. Defendant's crime was not a discretionary restitution
offense.

Defendant also cannot prove prejudice. Because the
restitution order's stated sum of $174,486.72 for which Defendant
is responsible (jointly and severally with co-defendants) to make
whole the victims of the stolen vehicles is the correct amount of
restitution , any frivolous objection by sentencing counsel would
not have changed the result.

Defendant also argues that counsel was deficient for failing
to object to the PSR's calculation of his criminal history, because

his Criminal History Category should be V, not VI.

Defendant's proffered re-calculations of his criminal history are incorrect, because the PSR's use of Defendant's imposed sentences, rather than suspended sentences, is the correct method to calculate criminal history. For example, with respect to the August 1996 conviction in Prince William County for larceny of a motor vehicle, Defendant was sentenced to 2 years incarceration, even though he only served a few months. This was properly calculated in the PSR under § 4A1.1A, as this was a prior sentence of imprisonment exceeding one year and one month. The April 1993 conviction in Fairfax County for making a false statement to obtain credit and forgery was also properly calculated under § 4A1.1A as 3 points, because Defendant was sentenced to two years incarceration on each count to run consecutively; that the court suspended 2 years as to count one and 1 year and 9 months as to count two does not mean that the PSR should look to the suspended sentences to calculate criminal history.

The PSR also correctly calculated Defendant's March 1994 sentence imposed by the U.S. District Court in Alexandria of 38 months incarceration on two concurrent counts, for interstate transportation of stolen goods, motor vehicle trafficking, and possession of stolen goods, as meriting 3 points under § 4A1.1A. While Defendant argues that his July 1997 sentence for conspiracy in the U.S. District Court in the District of Columbia is for the

same offense as the 1994 sentence in this Court, in fact, the offenses of conviction are different.  Defendant also complains that the October 2008 sentence in Spotsylvania County, Virginia for possession of marijuana was dismissed and should not have been given 1 point under § 4A1.1. In fact, the PSR reflects that Defendant was found guilty and sentenced; thus the 1 point is proper.

Defendant argues that trial counsel was ineffective for: (1) failing to move for dismissal of Count I on the basis that the Speedy Trial Act had been violated and (2) for failing to argue for dismissal on grounds of pre-indictment delay.  Both arguments are incorrect.

"'When a defendant pleads guilty, he waives all non-jurisdictional defects in the proceedings conducted prior to entry of the plea.'"  United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004).) Thus, the defendant who has pled guilty has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea or the government's power to bring any indictment at all.  Id.  The right to a speedy trial under the Speedy Trial Act is non-jurisdictional.  See Washington v. Sobina, 475 F.3d 162, 166 (3rd Cir. 2007) (citing cases).

During the July 7, 2010 plea hearing, the Court made sure that Defendant specifically understood that by pleading guilty, he was giving up his constitutional guarantee to the right to a speedy and public trial.  Thus, by knowingly and voluntarily pleading guilty,

Defendant waived his right to collaterally attack his conviction by either claiming a Speedy Trial Act violation or pre-indictment delay.

Even if Defendant had not pled guilty and therefore waived his right to collaterally attack his conviction on these delay grounds, there is no Speedy Trial Act violation. Defendant's claim of ineffective assistance is based upon his counsel's failure to seek a dismissal of Count I (conspiracy) on the grounds that the Indictment was returned on May 5, 2009, 32 days after his arrest on April 3. However, the Speedy Trial Act's requirement that an indictment be filed within thirty days from the date of arrest is subject to exclusions for "[a]ny period of delay resulting from other proceedings concerning the defendant . . . ." 18 U.S.C. § 3161(h)(1). See United States v. Leftenant, 341 F.3d 338, 343-45 (4th Cir. 2003) (indictment timely, because Act's 30-day period requires that an indictment be returned within thirty *non-excludable* days, not thirty *calendar* days, after excluding any periods of delay resulting from other proceedings concerning the defendant; dates on which pre-trial hearings were conducted must be excluded); United States v. Wright, 990 F.2d 147, 148-149 (4th Cir. 1993) (no Speedy Trial Act violation, because defendant's initial appearance and detention/preliminary hearing dates were pre-trial proceedings excludable under § 3161(h)(1) and the government's motion for temporary detention also rendered the day of the initial appearance excludable as a delay resulting from a pre-trial motion) (citing §

3161(h)(1)(F) [present-day § 3161(h)(1)(D)]); United States v.

Milam, 96 F.3d 1440, 1996 WL 511486 (4th Cir. 1996) (indictment timely;

further, no actual showing of delay required before the days on which

motions are filed or hearings are held can be excluded from the speedy

trial period) (citing United States v. Wright, 990 F.2d 147, 148-49

& n.2).

Here, under § 3161(h)(1), the dates of Defendant's initial

appearance (April 6, 2009) and his preliminary and detention hearings

(April 9, 2009) are periods of delay resulting from other proceedings

concerning the defendant and, therefore, excludable days not counted

within the Act's 30-day period. Further, at both hearings, the

government made motions for Defendant's detention, which were

granted, thereby providing an alternative basis for excluding the

two days from the 30-day calculation. After excluding April 6 and

April 9 as excludable days under either or both bases above, May 5,

2009 is the 30th non-excludable day under the Act. Since the May 5

indictment was timely, there was no basis for counsel to file a

meritless motion seeking to dismiss Count I.

Similarly, Defendant's argument that trial counsel was

ineffective for failing to argue for dismissal on grounds of

pre-indictment delay was not only waived, it is belied by the record.

Defense counsel filed two motions to dismiss indictment on the

grounds of pre-indictment delay, on June 4, 2009 and on July 6, 2009.

Both were denied.  Contrary to Defendant's belief, defense counsel

*did* argue that the elapse of three years between 2006, when Defendant's crimes took place, and 2009, when Defendant was prosecuted, prejudiced Defendant and that the Government's reasons for delay were unjustified.  These arguments did not prevail, because Defendant failed to show actual, substantial prejudice and, in any event, the Government's reasons for any delay were justified and did not violate fundamental concepts of justice. Defendant's attempts to re-litigate arguments previously made to, and resolved by, this Court should be rejected.

Defendant alleges that, in response to his question as to whether he could plead *nolo contendere,* trial counsel advised that he could not do so and that he only had two choices, to go to trial or to plead guilty.   Defendant complains that trial counsel's poor advice prejudiced him because by pleading guilty, he waived various rights.

In order to show ineffective assistance of counsel in recommending a plea, Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Defendant cannot meet this burden. Assuming, *arguendo,* that trial counsel advised Defendant that he could not plead *nolo contendere*, she was correct:   Defendant did not have the option of pleading *nolo contendere*, because the United States' policy is not to offer or to consent to *nolo contendere* pleas,

absent highly unusual circumstances not at issue here.  See United States Attorney's Manual § 9-16.010 ("United States Attorneys may not consent to a plea of *nolo contendere* except in the most unusual circumstances and only after a recommendation for doing so has been approved by the Assistant Attorney General . . . or . . . the Attorney General.").  Even if trial counsel had told Defendant that he could plead *nolo contendere*, the United States would not have accepted such a plea.  The prosecutors were in court, ready to begin jury selection, when Defendant pled guilty.

In any event, Defendant cannot establish prejudice -- that there is a reasonable probability that, but for counsel's advice that he could not plead *nolo,* he would not have pled guilty and would have insisted on going to trial. No evidence supports this speculation. To the contrary, if she had advised that he could plead *nolo,* Defendant suggests that he would have so pleaded. In a criminal case, a plea of *nolo contendere* has the effect of a guilty plea. United States v. Norris, 281 U.S. 619 (1930).  While a *nolo* plea might have protected Defendant from having the criminal convictions used against him in civil proceedings filed by the rightful owners of the vehicles Defendant stole, it is unclear how not being able to pursue the *nolo* plea option (which did not exist, as trial counsel advised) forced him to waive rights in the appellate process, as Defendant suggests. To the contrary, because Defendant pled guilty without a plea agreement, he *was* able to preserve his appellate rights and

26

proceed with an appeal to the Fourth Circuit.

Defendant's complaint that trial counsel was ineffective because she did not seek a plea agreement that pertained only to the information contained in the indictment, failed to explain the true nature of the charges, and that absent such ineffective representation, he "would have accepted the Government's offer of 41 months" should also be rejected.  First, Defendant provides no admissible evidence to support these conclusory statements.  To the contrary, the only evidence provided, a June 16, 2009 letter from trial counsel to Defendant, advises Defendant that it is in his best interest to plead guilty, under either plea offer, rather than go to trial.  She also explained that Defendant's "Criminal History Category VI" -- which was not information contained in the indictment -- would impact Defendant's guideline range, thereby undercutting Defendant's suggestion that counsel could have sought a plea agreement that pertained only to the information contained in the Indictment.

Second, Defendant cannot show prejudice. Defendant's claim that he had "instructed" trial counsel to seek a plea agreement that pertained only to the information in the indictment is of no consequence, because the United States would never have agreed to such a plea agreement, given that the Guidelines require that "relevant conduct" broader than the conduct charged in an indictment be considered for sentencing purposes.  This is why, for example,

27

a defendant's criminal history is one of the most important factors influencing the ultimate sentence that a defendant will receive, whether or not he pleads or goes to trial, even though a defendant's criminal history is usually not alleged in an indictment.  Nor can Defendant show that, but for counsel's allegedly poor advice, there is a reasonable probability that Defendant would have accepted the purported plea offer, because there was never such a plea offer of 41 months.  Rather, the June 16, 2009 letter from defense counsel plainly states that the Government's offer was to have Defendant to plead guilty to *conspiracy* – not 41 months – before June 19, 2009. Defense trial counsel *estimated* in good faith that such a plea would yield a sentencing range of 41 to 51 months, not 41 months. Critically, even assuming that the Government's plea offer had translated to a sentencing range of 41 to 51 months, the Court was no longer required to sentence within the applicable guideline range, therefore, there was no guarantee or assurance that the Court would have sentenced him to 41 to 51 months, even had he accepted the offer to plead guilty to conspiracy by June 19, 2009.

Defendant's argument that trial counsel was constitutionally ineffective for advising him to plead guilty to Count II and for failing to advise him of venue defense is also without merit. The June 16, 2009 letter attached to Defendant's motion contradicts his assertion that counsel failed to advise him of this defense.  He was advised that Count II was not properly before the Court, if the trial

evidence confirmed that Defendant did not take any action with respect to the Land Rover until it was in Maryland.   Defendant knew about the venue defense, and counsel was not ineffective for not seeking dismissal of Count II before Defendant pled guilty, given that the June 16, 2009 letter reflected that a motion for dismissal of Count II could only be filed, *if* the trial evidence supported such a motion.

Defendant argues that appellate counsel, Mr. Jenkins, was ineffective for failing to raise on appeal several arguments, including many of the arguments that Defendant raises in the instant Section 2255 Motion.   An appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 287-88 (2000).   There is a "strong presumption of attorney competence," and the court's review of an appellate counsel's performance is "highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381, 383 (1986).   Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001) (internal quotation and citations omitted).

Here, Defendant cannot demonstrate ineffectiveness or any prejudice.   Appellate counsel challenged the sentence of 84 months

imposed, arguing that the District Court abused its discretion by not adhering to the substantive reasonableness standard.  In particular, appellate counsel took issue with the Court's adoption of the PSR's calculations for the Guidelines' range on Counts 1 and 2 at 84 to 105 months.  However, taking into account the totality of the circumstances, the Fourth Circuit rejected counsel's arguments and affirmed the Court on the grounds that Defendant's sentence differed from those of his co-conspirators because his more extensive criminal history yielded a higher Guidelines range.  While appellate counsel's arguments ultimately did not prevail, his representation cannot be regarded as ineffective, even though they did not encompass every argument Defendant makes now in the instant motion.  The Constitution requires reasonably effective assistance under the circumstances -- not hypothetical perfection.  See White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) (test is not what the best lawyers would have done or what most good lawyers would have done, but only whether some reasonable attorney could have acted in the circumstances as this attorney did), cert. denied, 514 U.S. 1131 (1995).

Further, this claim is based on appellate counsel's failure to argue on appeal certain issues which Defendant has identified in his Section 2255 Motion, such as Defendant's failure to be awarded a decrease in offense level for acceptance of responsibility under U.S.S.G.   § 3E1.1, in light of Defendant's plea of guilty on the day

of trial.  Appellate counsel cannot be found to have rendered ineffective assistance by failing to assert arguments without merit on appeal.  Rather, as noted in <u>Sellen</u>, appellate counsel's decision not to pursue frivolous claims is a sign of a good advocate.

Defendant also argues that appellate counsel abandoned Defendant's appeal, by not seeking *en banc* review. (Ground Sixteen). However, Defendant shows no prejudice.  Merely contending that he "lost the opportunity for further [*en banc*] review" is not enough. Defendant cannot show that the result would have been any different, had counsel sought *en banc* review. To the contrary, it is unlikely that *en banc* review would have been granted, particularly given that the Fourth Circuit affirmed Defendant's conviction and sentence in an unpublished opinion.  *See* Fed. R. App. Pr. 35(a) ("[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered" absent the necessity to secure uniformity of the court's decisions or the proceeding involves a question of "exceptional importance.").  Given that Defendant's sentence of 84 months was within both the Guidelines range advocated by his own counsel, as well as within the range recommended by the probation office, his sentence, being a Guidelines sentence, most likely would have been deemed reasonable by the *en banc* Court as well.  <u>See United States v. Green</u>, 436 F.3d 449, 457 (4th Cir. 2006) (concluding that a sentence imposed within the properly calculated advisory Guideline range is presumptively reasonable).

Defendant contends that his plea was unknowing and involuntary, because he did not know that he would be held responsible (presumably for loss) in excess of what is reflected in the indictment. He claims that had he known that he would be held accountable for non-relevant information "varying" from the offense of conviction, he would have insisted on trial. He also asks to be able to consider the "Government's plea offer of 41 to 51 months" or to go to trial.

This argument also provides no basis to vacate the sentence. The Indictment plainly alleged a conspiracy to receive and sell stolen motor vehicles and that the overt acts included, "but [were] not limited to," certain stolen vehicles identified in the Indictment. Contrary to Defendant's claim, defense counsel advised Defendant that pleading guilty to conspiracy with no agreement as to the loss amount would mean that the Government would be free to argue a loss amount higher than $400,000. During the Rule 11 plea colloquy, Defendant acknowledged that he could be imprisoned up to five years for Count I and up to ten years for Count II, if his plea were accepted. Defendant admitted that he possessed and concealed a Range Rover that had been stolen from Land Rover of Alexandria. The Court made sure that he understood his constitutional rights, the nature of the charges and penalties, and the consequences of the plea.

The pleas were voluntarily and intelligently entered and that there was a factual basis to support the pleas. Although the

Government recommended a sentencing range of 100 to 125 months imprisonment, the Court sentenced Defendant to 84 months, within the 70 to 87 month range identified by defense counsel.  Defendant has not shown by a preponderance of the evidence that his plea was unknowing and involuntary.

Defendant argues that there was prosecutorial misconduct and a Brady violation, based upon the Alexandria Office of Sheriff removing certain personal pictures and pages from a package located in his cell.  He also states that the personal pictures that were taken from his cell by the deputy sheriff were subsequently offered by the Government as an exhibit for trial.

The complained-of conduct does not constitute prosecutorial misconduct nor a *Brady* violation. A defendant's Due Process rights are violated when the prosecution fails to disclose favorable evidence that is material to guilt or punishment.  See Brady v. Maryland, 373 U.S. 83, 87 (1963). Defendant might or might not have a grievance against the Alexandria Office of Sheriff, but the deputy sheriff's conduct does not constitute conduct by attorneys for the United States, let alone a failure to disclose favorable evidence that is material to guilt or punishment.  Similarly, Defendant's concerns that his defense counsel or her supervisor did or did not agree with his requests also do not constitute prosecutorial misconduct.  Most importantly, Defendant admits that the Government turned over the material at issue.

33

Because there is no prosecutorial misconduct or <u>Brady</u> violation, the Court need not reach the issue of prejudice. Indeed, Defendant does not argue that he was prejudiced.

An evidentiary hearing is unnecessary because Defendant's Motion and attachments , with the files and records of this case, show that the prisoner is not entitled to relief. <u>Moreno-Morales v. United States</u>, 334 F.3d 140, 145 (1st Cir. 2003) ("[e]videntiary hearings on 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted"; hearing not necessary when a § 2255 petition is inadequate, or although facially adequate, is conclusively refuted as to the alleged facts by the case files and records). None of the alleged deficiencies attributed to any defense counsel establish that any of them represented Defendant below an objective standard of reasonableness and that there is any reasonable probability that, but for the alleged errors, Defendant would have received a shorter sentence.

For all the foregoing reasons, Defendant Antonio Minor's Motion to Vacate, Set Aside, or Correct Sentence should be denied.

An appropriate Order shall issue.

_____/s/_____

Claude M. Hilton

United States District Judge

Alexandria, Virginia
February 13 , 2012